JOSÉ MOA, in his own right and in representation of his minor son GUILLERMO MOA ROSADO, Plaintiffs and Appellants, *v.* COMMONWEALTH OF PUERTO RICO, Defendant and Appellee.

No. R-69-156.     Decided April 18, 1972.

*Héctor Lugo Bougal, Delia María Auffant,* and *Delia Lugo Bougal* for appellants. *Gilberto Gierbolini, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General, Américo Serra,* and *Lydia Nieves Franqui, Assistant Solicitors General,* for appellee.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The events and circumstances which gave rise to this petition for review are recited by the trial court, in its findings of fact, in the following manner:

"1. Guillermo Moa Rosado, in the month of March 1966, was fifteen years old, resided in Ponce, Puerto Rico, and was in the ninth grade at Newmann Junior High School of Ponce, Puerto Rico. He was pursuing the regular ninth grade program and among his subjects he was taking Industrial Arts, his teacher being Mr. Diógenes Cedeño. The Newmann Junior High School is part of and is supervised by the Department of Education of the Commonwealth of Puerto Rico.

"2. On March 3, 1966, about 9:30 in the morning, Guillermo Moa Rosado, the minor plaintiff, was attending as a pupil the Industrial Arts class at the said school. The teacher, Diógenes Cedeño, called him to help him pass a piece of wood in an electric machine known as *'caricanto.'* The *caricanto* machine is a sort of electric plane with three cutting edges that rotate forward at a great speed. The use of this machine is regulated by specific safety standards because of the danger involved in its operation.

"3. After passing the first piece of wood through the machine, the teacher disconnected the machine and laid the bevelled piece of wood on a table. Guillermo Moa remained next to the machine waiting for orders from the teacher inasmuch as the latter did not give him any instructions and the boy did not know if he had finished or if another piece of wood was to be bevelled. When the teacher laid the piece of wood on the table, the minor looked towards said table to observe how the piece of wood looked, after having been bevelled. All of a sudden he heard the noise of the machine after having been plugged again, and simultaneously he felt a pull on his left index finger. On looking at his shirt he saw blood on it. At the same time he heard the voice of his teacher saying: 'Moa, what happened?' The teacher was bent down, with the machine cord in his hand, disconnecting the machine again from the electric current. All was very fast, a matter of seconds.

"4. The teacher took out his handkerchief, gave it to Moa, who wrapped his finger in the handkerchief, and together they went to the office to inform the School Principal about the accident. From there they left for Tricoche Hospital, and the minor plaintiff started to feel severe pain in his finger. He was administered an injection to alleviate the pain. He could not be cared for at Tricoche Hospital; from there they went to the child's home, because he felt extremely worried as to how his father and his mother would receive the news. The pain was severe, and on reaching the house, the father took him to the District Hospital where after several hours he was not taken care of either. He still had the finger wrapped in the handkerchief. He was taken by the father to Clínica Dr. Pila where he was hospitalized and taken care of by Dr. Jaime Costas Diurex. Immediately after he arrived he was anaesthetized and taken to the Operating Room where the distal phalanx of the left index finger was amputated. He remained two days at Clínica Dr. Pila, but continued ambulatory treatment until March 15, 1966.

"5. The minor student, besides the physical pain resulting from the accident and the operation, suffered mental and moral anguish. His greatest anguish while at the hospital was the manner in which the finger would remain. Upon awaking from the anaesthesia, he asked his parents how his finger had come out. They refused to tell him the truth, that the distal phalanx had been amputated. The minor learned that he had lost part of

the finger days later after leaving the hospital when he went to get treated at the office of Dr. Costas Diurex and he 'felt ill' upon seeing the condition of his finger..

"6. Even at present he feels very badly about his left index finger. Normally, he tends to conceal it when he is before groups of kids and he refrains from participating in certain activities such as dancing. On the date of the accident Guillermo Moa Rosado was fifteen years old, was a healthy boy, and participated in activities proper for his age. After the accident there has been some limitation in his life, in his physical as well as in his mental and psychological aspects.

"7. *The minor plaintiff's father, José Moa, has also suffered as a result of his son's accident. He was able to feel the latter's sufferance and physical pain on the days after the accident and has noticed the effects occasioned by the same to his son. He is his youngest child.* [Italics ours.]

".     .     .     .     .     .     .     .

"10. The teacher, Diógenes Cedeño, did not properly exercise his duties as teacher in charge of an industrial arts workshop, neglecting his duty to watch and supervise the students. The said teacher should have exercised these duties with the greatest degree of diligence, taking into consideration the type of class under his charge, the activities to be developed in the same, and the inherently dangerous machine used in said schoolroom. The unobservance or unfulfillment of said duties brought as a consequence the accident which occurred and the damages resulting from the same.

".     .     .     . .     .     .     .     .

"12. Pursuant to the evidence produced during the hearing of the case and to the teacher's own admissions, there is nothing in the evidence presented before this court to permit it to conclude that the damages suffered by the minor plaintiff had an origin other than the negligent conduct observed by the teacher Diógenes Cedeño, imputable to defendant, the Commonwealth of Puerto Rico.

"13. As a result of the facts set forth, the minor plaintiff, Guillermo Moa Rosado, has suffered physical pain, it having been necessary to submit himself to medical treatment, including a surgical intervention to amputate the distal phalanx of his left index finger. Besides, he has suffered the consequential

mental and moral damages, damages which should be indemnified by defendant insofar as possible."

On August 16, 1966—that is to say, five and a half months after the accident—the injured minor's father, José Moa, "in his own right and in representation of his minor son, Guillermo Moa Rosado," filed before the Superior Court, Ponce Part, an action for damages, against the Commonwealth of Puerto Rico, setting forth in his complaint the following:

"IN THE SUPERIOR COURT OF PUERTO RICO
PONCE PART

| "José Moa, *in his own right* and in representation of his minor son, Guillermo Moa Rosado, *Plaintiffs* v. "Commonwealth of Puerto Rico, Defendant | Civil No. CS66-2644 On: Damages |
|---|---|

"C O M P L A I N T

"Honorable Court:

"Now come *the plaintiffs* and through the undersigned attorneys, very respectfully set forth, allege, and pray:

"(1) *That plaintiff, José Moa, is of age, married, and resident of Ponce, Puerto Rico, and he appears in this action in his own right and in representation of his minor son,* Guillermo Moa Rosado.

"(2) That through Act No. 104 of June 29, 1956, [*sic*] the Commonwealth of Puerto Rico permits and gives consent to be sued by third persons when damages are caused grounded on negligent act or omission of any agent, agency, or employee, acting in an official capacity within the scope of his duties.

"(3) That on March 3, 1966, the minor plaintiff, Guillermo Moa Rosado, was a student of the Newmann School of Ponce, property of and under the direction and supervision of the Commonwealth of Puerto Rico. On said date and while attend-

ing carpentry classes, whose teacher was Diómedes [*sic*] Cedeño, he called the minor, plaintiff herein, to help him put a wooden board through the machine known as '*calicanto*' which is an electrical plane used to saw wood.

"(4) That the use of said machine is prohibited to students because of the dangerousness of the same, and the teacher, neglecting his duty of vigilance, invited the minor plaintiff to help him, with the well-known danger and risk, causing the minor a wound in his left hand index finger, it being necessary to amputate the said finger at the middle.

"(5) That the direct cause of the accident was the negligence of the Commonwealth of Puerto Rico, through its agent and employee, the teacher, Diómedes Cedeño, in not exercising the due supervision in the work to be performed by the minor, upon inviting him to tamper with a dangerous machine, whose use by the students is prohibited, and in not taking measures to avert the risks which the use and handling of dangerous instruments, as is the said machine, offers to inexpert minors.

"(6) That as a consequence of the described accident, the minor coplaintiff has suffered a disability arising from the amputation of his left index finger, has suffered severe physical pain, besides damages and mental anguish on seeing his index finger mutilated, damages which he assesses in a sum not less than $10,000.

"WHEREFORE, we very respectfully pray this court *to sustain* in due time and after the pertinent legal proceedings, *the present claim and to order the defendant to pay the plaintiffs the total sum of Ten Thousand Dollars ($10,000)*, plus costs, expenses, and a reasonable amount for attorney's fees." (Italics ours.)

The defendant having been duly summoned on August 19, 1966, it answered the complaint denying "each and every one of the facts as they appear set forth in the complaint except that it admits (a) That on or about March 3, 1966, Guillermo Moa Rosado was a student of the Newmann School of Ponce and (b) On the aforementioned date Guillermo Moa Rosado suffered an accident losing part of the index finger of his left hand."

As affirmative defenses it alleged that: (1) the complaint does not adduce a cause of action in favor of the plaintiffs and against the defendant; (2) the accident was a casual one in which there was no negligence of the Commonwealth of Puerto Rico, its officers or employees, and (3) the accident was due to the minor's fault or negligence or in its default, his conduct contributed substantially to the same.

The litigation went to trial on August 29, 1967. Its preliminary incidents are set forth by the trial judge thus:

"To the hearing of the above-entitled case the plaintiffs appeared represented by attorneys Delia María Auffant and Delia Lugo Bougal, and the defendant by attorneys Rafael E. Castro Pérez and Gilberto Irizarry. At the commencement of the hearing, the plaintiffs *asked the court's leave to amend the complaint to the effects of clarifying allegation No. 6* to indicate that compensation was being requested for the damages and mental anguish sustained by the minor plaintiff's father as well as by the minor himself. *In the title of the complaint, in the prayer, and in the first allegation, it was set forth that the minor's father,* JOSÉ MOA, *appeared in his own right and in representation of his minor son, Guillermo Moa Rosado. The court granted permission for the amendment,* and the defendant, although it entered opposition to the same, *stated that it was ready for the hearing of the case.* Both parties introduced oral and documentary evidence for the consideration of this court.

"The parties agreed to file memorandums as *to the permitted amendment* and thus they have done." (Italics ours.)

The minutes of that day gather more details of those incidents. Among other things, it is set forth therein:

"The plaintiffs request the amendment of the last paragraph, allegation No. 6, *so that the damages and mental anguish sustained by his father be included.* The defendant alleges that it is a new cause of action and objects to the amendment. It requests that the allegation be dismissed because the same has prescribed.

"The aforementioned question having been discussed by both parties and submitted, the court, *relying on Rule 13.1* of the Rules of Civil Procedure *grants the petition for amendment which was filed by the plaintiffs.*

*"The defendant agrees to proceed with the hearing of the case as amended.*

"The plaintiffs introduced oral evidence which consisted of the testimonies of GUILLERMO MOA ROSADO and JOSÉ MOA LEÓN, plaintiffs." (Italics ours.)

On May 19, 1969, the trial court rendered judgment in the case. It sustained the complaint as to the coplaintiff minor, granting him a compensation of $4,500 for the damages suffered by him. It dismissed the complaint as to the coplaintiff father, José Moa, on the following ground:

"We do not doubt that with the requested amendment plaintiffs sought to introduce a new cause of action which had already prescribed."

We decided to review the judgment at plaintiffs' request. The assignment of errors is set forth as follows:

*"First Error*: The trial court erred in dismissing the action of the minor plaintiff's father, inasmuch as the amendment to the original complaint did not introduce a new cause of action and therefore had not prescribed.

*"Second Error*: The trial court erred in assessing the damages sustained by the minor plaintiff in the sum of $4,500."

I

The respective thesis, cleverly sustained by each party, as to the first point in issue, is as follows:

Appellants: it was overtly erroneous to dismiss the compensation claim made in his own right by the coplaintiff father, José Moa, on account of moral damages which he sustained as a result of the injuries suffered by his son on March 3, 1966, because the amendment he proposed to the sixth paragraph of the complaint and which the court admitted at the trial had the sole purpose of clarifying it in the sense of indicating that what was claimed for sufferings and mental anguish referred to those suffered by the son as well as to those suffered by the coplaintiff father without increas-

ing the total amount of the claim; that said amendment, therefore, did not introduce in the litigation any prescribed new cause of action.

Appellee: the dismissal was correct, in the original complaint no claim was made for any moral damage whatsoever particularly sustained by the father; only the physical and moral damages sustained by his minor son Guillermo were claimed; he appeared in the action exclusively in representation, as father and for the benefit of his son; by virtue of the aforementioned amendment a new cause of action in favor of the father, José Moa, was introduced, and it had prescribed.

■ Appellants are correct in this first contention. In our judgment, the amendment to the sixth paragraph of the complaint, considered together with all the other allegations of the original complaint, did not bring into the litigation a new cause of action, it only corrected a formal deficiency incurred upon formulating the claim. Assuming that it had been brought, the amendment was admissible and the new cause of action had not prescribed. Let us see.

It is true that in the original complaint, only allegations concerning the damages sustained by the minor are set forth in the following terms:

"That as a consequence of the described accident, the minor *coplaintiff* has suffered a disability arising from the amputation of his left index finger, has suffered severe physical pain, besides damages and mental anguish on seeing his index finger mutilated, damages which he assesses in a sum not less than $10,000." (Italics ours.)

However, the use of the expression *"coplaintiff"* denotes that the minor claimed in the suit in company of, together with, at the same time as, another person or persons. This person was his father. No other could have been the purpose of the first paragraph of the complaint which says:

"That *plaintiff, José Moa,* is of age, married, and resident of Ponce, Puerto Rico, and *he appears in this action in his own right* and in representation of his minor son, Guillermo Moa Rosado."[1] (Italics ours.)

In the title and in the prayer, father and son are indicated as *plaintiffs,* and the trial court is requested to grant compensation to both, although it is not indicated in what proportion.

The defendant, in the heading of its answer, motion for continuance, brief and motion requesting additional findings of fact, named *"plaintiffs",* to the party suing in the case, using also the term "José Moa, et als."

■ The complaint makes reference, in its second paragraph, to Act No. 104 of 1955, about suits against the Commonwealth of Puerto Rico, which in its § 2, amended on June 30, 1965, in part provides:

". . . Where an action is brought against the Commonwealth for damages to person or property, the court shall direct, through the publication of edicts in a newspaper of general circulation, *that all persons having a common interest shall appear together before the court* on the date set on the edicts for the purpose of distributing the sum of $30,000 among the plaintiffs, as provided in this act." 32 L.P.R.A. § 3077.

Thus the State avoids being submitted to future litigations for the same cause of action. For this reason that provision of said statute should be faithfully complied with by the corresponding court.

So that it is the act itself that makes the appearance compulsory in actions of this nature, "to all persons having a common interest" in the case, without making any distinction between them about the grounds of their cause of action. This

---

[1] Under this dual appearance two separate causes of action were exercised; one, personal, for the benefit of the father, and the other, representative, for the benefit of the minor son. See *Gigante* v. *Alvarez,* 48 P.R.R. 484, 488 (1935).

Act, then, legitimates the personal action that José Moa obviously exercised, in his own right, that is to say *iure proprio*, independent of the family relation that ties him to his son.

The norm that all those who receive or really suffer a moral damage are entitled to the adequate compensation against the one liable, which arises from § 1802 of our Civil Code, is very familiar. It is clear that, in this matter, we always follow the hypothesis of injury. In the latter's absence, there is no damage to compensate or redress. Our case law concerning such provision has always required that, in these cases, the damage suffered by the fault or negligence of the person liable be alleged in the complaint. In this aspect, up to a certain point, José Moa's claim by his own right failed. The reason therefor could have been that he did not state separately, in his original complaint, each claim, to facilitate the clear and complete presentation of the matters set forth, as provided by Rule 8.2 of the Rules of Civil Procedure.

Nevertheless, in his drafting he fulfilled all the other general norms for the pleadings fixed by Rules 6, 7, 8, and 9. He observed one of the two requirements that said Rules set forth for a claim for relief, that is to say, he set forth the demand for relief to which he deemed himself entitled, thus:

"Wherefore, we very respectfully pray this court to sustain in due time and after the pertinent legal proceedings, the present claim and to order the defendant to pay *the plaintiffs the total sum* of Ten Thousand Dollars ($10,000), plus costs. . . ." (Italics ours.)

This claim for relief for both did not cure the defect produced by the lack of "a short and plain statement of the claim" showing that the pleader—José Moa, individually— is entitled to relief, as required by Rule 6.1.

We were, then, before a deficient exposition of a cause of action, predicable under some juristic facts acknowledged in

the proper findings of fact subsequently formulated by the trial court.

However, this deficiency disappeared in the following manner:

"At the commencement of the hearing, the plaintiffs asked the court's leave to amend the complaint to the effects of clarifying allegation No. 6 to indicate that compensation was being requested for the damages and mental anguish sustained by the minor plaintiff's father as well as by the minor himself. . . . The court granted permission for the amendment, and the defendant, although it entered opposition to same, stated that it was ready for the hearing of the case. Both parties introduced oral and documentary evidence for the consideration of this court." —Opinion and Judgment, Original Record, p. 85.

Thus the deficiency of the complaint was cured for the first time with retroactive effect to the date of the complaint, under Rule 13.3.

In its findings of proven fact the trial court relates the afflicted intervention of the father José Moa in the affair, from the moment that his son got home injured suffering severe pain, and among them, makes the following finding with respect to José Moa:

"7. The minor plaintiff's father, José Moa, has also suffered as a result of his son's accident. He was able to feel the latter's sufferance and physical pain on the days after the accident and has noticed the effects occasioned by the same to his son. He is his youngest child."

With the evidence presented by the plaintiffs and this finding of the trial court, the indicated defect of the original complaint was again cured, in the light of the provisions of Rule 13.2.

The amendment did not introduce a new cause of action as the appellee maintains. It simply clarified a concept which was impliedly set forth in the original complaint, or which could be rationally inferred from its allegations, that is, that the father also claimed for moral damages because of the

accident that his son suffered. What was clarified by the amendment was that in the compensation the son and his father should participate, in payment of the respective damages which they sustained, in the respective amounts that the trial court would fix.

■ All pleadings—Rule 6.6 warns—shall be construed conjointly and for the purpose of doing substantial justice; their function is merely to skeletonize the controversy and for each party to notify the other of the general nature of their opposing contentions; the procedure, a purely formal element, should not be used as a means to defeat substantive rights of a party; the complaint, in particular, should be construed in such a manner that it shall only be dismissed if the plaintiff is not entitled to any relief under any state of facts which he may prove at the trial in support of what he has alleged in the complaint, as we have said so many times.[2]

■ With greater reason should those principles be applied to the case at bar, where a father, in a precarious state of health,[3] claims compensation for the damages he sustained upon contemplating that his son is permanently mutilated on part of his left hand, tortured by severe pain and mental anguish. For the father to morally suffer for the mishap of

---

[2] See, Rafael Hernández Colón, *Manual de Derecho Procesal Civil* 161, Equity, 1969.

[3] In the record of the case, there appears a medical certification from Dr. Francisco C. Porrata, of May 22, 1967, which was attached to a motion for continuance of the trial, where the following is stated:

"May 22, 1967

"TO WHOM IT MAY CONCERN:

"This is to certify that Mr. José Moa León is hospitalized at Clínica Dr. Pila, Ponce, P.R. since 5/16/67. He will have to remain in the hospital about two more weeks.

"Diagnosis:

"Heart failure due to auricular fibrillation with a rapid ventricular rate due to arteriosclerotic heart disease.

Francisco C. Porrata, M.D."

his son, is, in general terms, an ordinary habit of life, an unavoidable psychic process in every normal human being. It is a matter of common and general acknowledgment, notorious and unquestionable, that at the level of the evidence, it is or should be of judicial notice, even in the absence of any evidence to that effect.[4]

■ But, since pain and suffering cannot be object of quotation, to determine the reasonable value of such moral damages it is necessary that the claimant, in each case, bring the necessary factors of evidence to evaluate them fairly and adequately, showing that it is not a question of a simple passing affliction, but that, in some appreciable measure the health, welfare, and happiness of the claimant were really affected, as we said in *Ramos Rivera* v. *Commonwealth*, 90 P.R.R. 806, 809 (1964).

In *Cintrón* v. *Ins. Ind. & Agr. Exp. Ass'n, Inc.*, 58 P.R.R. 820, 828–829 (1941), we had a similar situation. Among other things we held there:

"The general rule in these cases is stated in 17 R.C.L. 821, as follows:

'The general rule is that an amendment to a petition which sets up no new cause of action, but merely amplifies and gives greater precision to the allegations in support of the cause originally presented, or states new grounds or specifications germane to such charges or allegations, relates back to the commencement of the action, and may be upheld without regard to the statute of limitations.'

"See also on this point 37 C.J. 1068, Section 507 *et seq.* In the case of *Mohn* v. *Tingley*, 217 Pac. 733 (191 Cal. 470), it was held that:

'If an original complaint fails to state a cause of action and a new or different cause is not set up by the amended

---

[4] See *Lluberas* v. *Mario Mercado e Hijos*, 75 P.R.R. 7 (1953), and the cases of California, cited in the Code of Civil Procedure, § 1875—equal to § 36 of our Law of Evidence—of West's Annotated California Codes, Vol. 20, p. 638, about the judicial notice with respect to physical and emotional sufferings.

complaint, but new matters are added therein merely to make the original cause complete, the amendment, though made after the expiration of the period of limitations, relates back to the time of the filing of the first complaint.'

"The amended complaint in the case at bar did not set out a new cause of action but simply amplified the averments of the original complaint. As was stated in the case of *Ft. Wayne Iron & Steel Co.* v. *Parsell,* 94 N.E. 770, 776: 'there is a difference between a defective cause of action and a defective statement of a cause of action,' and the amendment to the latter relates back to the time of the commencement of the action."

The amendment referred to moral damages suffered by the father by virtue, and as natural effects and consequences, of the same event, conduct, and transaction set forth in the original complaint that also generated the damages suffered by his son. So much so, that, after the amendment was proposed and admitted, despite the opposition of the defendant, the amended sixth paragraph was drafted as follows:

"(6) That *as a consequence of the* described *accident,* the minor coplaintiff has suffered a disability arising from the amputation of his left index finger, has suffered severe physical pain, besides damages and mental anguish on seeing his index finger mutilated, *and damages and anguish suffered by his father here coplaintiff,* damages which they assess in a sum not less than $10,000." (Italics ours.) See p. 5 of the Memorandum of Authority, attached to the petition for appeal.

In *Ortiz* v. *Municipal Government of Ponce,* 94 P.R.R. 449, 455–456 (1967), considering the scope of the cited Rule 13.3 we stated thus:

"[6] On the other hand, considering Rule 13.3, it likewise appears that the claim asserted in the original complaint is identical to the one informed by the amended complaint. In *Cintrón* v. *Ins. Ind. & Agr. Exp. Ass'n, Inc.,* 58 P.R.R. 820 (1941) we had already stated that where an action is exercised within the term prescribed by law, if the complaint is amended after that term has expired and the amended complaint does not state a new cause of action but instead amplifies the aver-

ments of the original complaint, the amendment dates back to the date of the filing of the original complaint. There exist better grounds now to sustain identical solution in which the controlling concept of sufficiency is not so much the existence of a cause of action as whether there arises from the pleadings the susceptibility to grant a remedy. But there is more. Under former Rule 15(c) of 1943, we held in *Bithorn* v. *Santana*, 68 P.R.R. 281 (1948), that the allegations of the amended complaint relate back to the date of the original complaint, even though the former sets forth a different cause of action, provided both complaints arise out of the same conduct or transaction. See also, *Valado* v. *Mejía*, 69 P.R.R. 225 (1948); *Roses* v. *Juliá*, 67 P.R.R. 485 (1947); *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330 (1946). It is significant once more that the language of Rule 13.3 refers to the 'claim' and not to the cause of action.[4] In the present case the claim filed is identical."

"[4] We remarked incidentally that our Rule 13.4 on supplemental pleadings differs from the federal Rule 15(d) in that it permits them 'even if the original complaint is inadequate.' *Cf. Fajardo* v. *Tax Court*, 68 P.R.R. 691 (1948) decided under former Rule 15(d) of 1943."

The accident, we repeat, happened on March 3, 1966. The claim was judicially commenced on the following 16th of August. The trial was set, for the first time, for February 7, 1967. At the request of the defendant it was continued. The same happened when it was set for the second time. Had the case been seen on February 7, 1967, the petition for amendment could have been proposed before the year subsequent to the accident had elapsed. But, anyhow, the amendment, in its effects, dates back to that 16th of August of 1966, that is to say, to only five and a half months after the accident.

It is a question of an amendment, that, surely, for its true aclaratory nature, did not preclude the defendant from indicating to the court that, although it objected to it, it was "*ready for the hearing of the case,*" as it is stated in the Opinion and Judgment. Neither did it preclude it from introducing oral and documentary evidence. It objected, without

any success, to having José Moa testify about his mental anguish and suffering.

The court permitted Moa to testify and his testimony served as a ground for the determination of fact No. 7 which we copied above. It did not ask the elimination of such determination in its motion requesting additional findings of fact of May 29, 1969.[5]

■ Admitting that by the amendment a new cause of action was brought to the case, a possible thing under our and the continental case law which we have mentioned, the same had not prescribed, since the claim was brought five and a half months after the accident and the same was pending at the moment of the amendment.

■ As we held in *Feliciano* v. *A.S.A.*, 93 P.R.R. 638, 642, and 644 (1966), the mere effective filing of a complaint before a court, within the period of prescription (as was the original complaint presented by José Moa, in his own right, and, also in representation of his minor son Guillermo), which is an express act established by the court, produces the interruptive effect of the extinctive prescription of the action exercised, regardless of the vicissitudes that may arise subsequent to the filing of the complaint, like, for example, when the court to which appeal has been taken lacks jurisdiction to take cognizance of the action or when the claim is dismissed by means of a motion of nonsuit.

■ The interruption, by legal action, lasts until the action exercised definitively ceases. *Cf. Widow of Carlo* v. *Toro*, 99 P.R.R. 196, 220 (1970).

For the reasons stated we deem that the trial court incurred the first error assigned. Consequently we shall reverse the judgment rendered insofar as the same decrees the dis-

---

[5] We have examined the "petition" filed by the defendant before the trial court, insisting in its opposition to the amendment, even after its acceptance by said court, on the same ground that it introduced a new cause of action, which had prescribed.

missal of the particular cause of action brought by the co-plaintiff father, José Moa, with respect to the moral damages that he suffered because of the accident and, in turn, said cause of action shall be sustained ordering the defendant to pay the sum of Three Thousand Dollars ($3,000) as a just and reasonable compensation of said damages.

## II

The second error assigned deals with the assessment of the damages sustained by the minor coplaintiff. The appellants request that the amount of the compensation of $4,500 granted to said minor be increased. The appellee sustains that the same is just and reasonable and that there is nothing to justify its alteration.

■ Considering all the circumstances, elements, and factors particularly involved in this appeal, we believe that the compensation of Four Thousand Five Hundred Dollars ($4,500) granted to minor Guillermo Moa Rosado is not just and reasonable, for which reason the respondent court also incurred the second error assigned. The record before us is sufficient to consider it thus. The perdurability of the damage suffered by said minor, his age, the undesirable influence that the condition of his left hand may have had on his adolescence,[6] which has or may have in his youth or maturity, within the family circle, in his friendship relations, in his work, and in all human activity in which he may be involved, has convinced us that the sum of Ten Thousand Dollars ($10,000) is the adequate one as compensation for the damage he received. The judgment appealed from will be modified as to him.

Judgment will be rendered in accordance with the foregoing opinion.

---

[6] Today he must be 22 years old.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.